**FILED**
**June 18, 2012**
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004293789

DONALD W. FITZGERALD, State Bar No. 095348
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: dfitzgerald@ffwplaw.com
e-mail: jniemann@ffwplaw.com

CHRISTOPHER D. SULLIVAN (148083)
MATTHEW R. SCHULTZ (220641)
KENNETH A. BRUNETTI (156164)
TREPEL GREENFIELD SULLIVAN & DRAA LLP
150 California Street, 22nd Floor
San Francisco, California 94111
Telephone:      (415) 283-1776
e-mail: csullivan@tgsdlaw.com
e-mail: mschultz@tgsdlaw.com
e-mail: kbrunetti@tgsdlaw.com

Attorneys for Plaintiffs DAVID D. FLEMMER, in
his capacity as Chapter 11 Trustee of the
bankruptcy estate of Robert A. Cook; KINGS
PROFESSIONAL BASKETBALL CLUB, a
California general partnership

Co-Counsel for  Plaintiffs DAVID D. FLEMMER, in his
capacity as Chapter 11 Trustee of the bankruptcy estate of
Robert A. Cook; KINGS PROFESSIONAL BASKETBALL
CLUB, a California general partnership

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT A. COOK,<br><br>        Debtor.<br>_____<br><br>DAVID D. FLEMMER, in his capacity as Chapter 11 Trustee of the bankruptcy estate of Robert A. Cook; KINGS PROFESSIONAL BASKETBALL CLUB, a California general partnership,<br><br>        Plaintiffs,<br><br>v.<br><br>OMNI FINANCIAL, LLC, a California limited liability company; CURA FINANCIAL, LLC, a California limited liability company; KINGS PROFESSIONAL BASKETBALL CLUB, A CALIFORNIA GENERAL PARTNERSHIP, a joint venture; TRAYNOR MARINA INVESTMENTS, LLC, a California limited liability company; JEFFREY B. BERGER, in his capacity as trustee of USA Real Estate Investment Trust; HEARN PACIFIC CORPORATION, a corporation,<br><br>        Defendants. | CASE NO.: 11-39335-C-11<br><br>Chapter 11<br><br><br>Adversary Proceeding No. <u>2012-2189</u><br><br>**FIRST AMENDED COMPLAINT FOR AVOIDANCE OF TRANSFERS; AVOIDANCE OF LIENS; PRESERVATION OF AVOIDED TRANSFERS AND LIENS; DECLARATORY RELIEF; OBJECTION TO CLAIM; AND DISALLOWANCE OF CLAIMS** |

David D. Flemmer ("Trustee"), solely in his capacity as the duly appointed and acting Chapter 11 Trustee for the bankruptcy estate of Robert A. Cook ("Cook Estate"), and Kings Professional Basketball Club, a California general partnership ("Original KPBC") and chapter 11 debtor-in-possession (collectively with Trustee, "Plaintiffs"), hereby bring this Complaint and respectfully complain and allege as follows:

## INTRODUCTION

1.      In 2006, Omni Financial, LLC, a commercial lender that invests and services a privately funded loan portfolio, decided to loan Robert A. Cook money to secretly try and buy a greater ownership interest in the Sacramento Kings basketball team and the Arco Arena.  Rather than follow the terms of the governing agreements (which generally required approval of the other owners of the team and the arena, as well as the National Basketball Association, to transfer or encumber any ownership interests), Omni worked with Cook to set up a phantom "joint venture" entity trying to fit within an exception allowing transfers to affiliates.  Omni and Cook sought to cover their tracks by picking the exact same name for the phantom joint venture as was used by another Cook partnership.  The scheme collapses under its own weight.  The transfers that encumbered the team ownership interests in violation of the team agreements and the NBA governance rules can be avoided by the Trustee here, who will also show that the joint venture entity never had a proper legal existence and lacked the authority to encumber the team ownership interests in the first place.  Avoiding Omni's claim to a security interest in the team ownership interests will prevent Omni from profiting from its wrongdoing in creating unlawful agreements designed to evade the restrictions on unapproved transfers.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a).

3.      Venue is proper in the Court pursuant to 28 U.S.C. §1409(a).

4.      This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (K) and (O).

5.     This proceeding is brought pursuant to 11 U.S.C. §§544 and 550 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

**PARTIES**

6.     On August 8, 2011 (the "Cook Petition Date"), Robert A. Cook ("Cook") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code.  An order for relief was entered that same day and the case was assigned Case No. 11-39335-C-11 (the "Cook Chapter 11 Case").  All assets and property rights of Cook became property of the bankruptcy estate under 11 U.S.C. §541 (the "Cook Estate").

7.     On October 27, 2011, the Court entered its order appointing David D. Flemmer as the Chapter 11 Trustee for the Cook Estate.

8.     Original KPBC purports to be a California general partnership originally formed in May 1983 by several partners.  Cook, either individually or through one or more entities, has been a general partner of Original KPBC ever since that time.  Original KPBC is a limited partner in both the Sacramento Kings Limited Partnership ("Team LP") and Kings Arco Arena Limited Partnership ("Arena LP") and currently holds a 7.06% limited partnership interest in both the Team LP and the Arena LP (collectively, the "LP Interests").  The LP Interests consist of Original KPBC's limited partnership interests in the both the Team LP and the Arena LP at any given time.  On April 24, 2012 (the "Original KPBC Petition Date"), Original KPBC filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code and the case was assigned Case No. 12-27935.  The Original KPBC remains in possession and control of its assets as debtor-in-possession, under the management of the Trustee of the Cook Estate, as the holder of the sole partnership interest in the Original KPBC.

9.     Upon information and belief, defendant Omni Financial, LLC ("Omni") at all times mentioned herein has been a California limited liability company with its principal place of business in Santa Cruz County, California.  Plaintiffs are informed and believe, and based thereon allege, that Omni is, and at all times relevant to the transactions alleged in this Complaint was, a Finance Lender and Broker licensed by the California Department of Corporations, is an

experienced commercial lender of real estate secured loans, and, as its primary business activity, invests and services a loan portfolio funded by private investors of over $100 million. Plaintiffs are further informed and believe, and based thereon allege, that Omni claims to hold a security interest in the LP Interests.

10.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Cura Financial, LLC ("Cura") at all times mentioned herein has been a California limited liability company with its principal place of business in Santa Cruz County, California. Plaintiffs are further informed and believe, and based thereon allege, that Cura is the managing member of Omni.

11.    Defendant Kings Professional Basketball, a California general partnership, joint venture ("KPBC Joint Venture") purports to be, according to Cura and Omni, a California joint venture allegedly formed by Cook and Cura in or about June 2006. On or about October 20, 2011, Cura filed an involuntary chapter 11 bankruptcy case against KPBC Joint Venture and the case was assigned Case No. 11-44952. An order for relief against KPBC Joint Venture was entered on February 15, 2012. KPBC Joint Venture is currently a chapter 11 debtor-in-possession.

12.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Traynor Marina Investments, LLC ("TMI") at all times mentioned herein has been a California limited liability company. TMI obtained a judgment against Cook pre-petition. Plaintiffs are further informed and believe, and based thereon allege, that TMI asserts a judgment lien on property of the Cook Estate pursuant to, among other things, an Order to Appear for Examination served on Cook on or about March 1, 2011, as well as a charging order entered by the Sacramento County Superior Court on or about June 13, 2011.

13.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Jeffrey B. Berger as trustee of the USA Real Estate Investment Trust ("USA Trust") at all times mentioned herein has had its principal place of business in Sacramento, California. Plaintiffs are further informed and believe, and based thereon allege that USA Trust obtained a judgment

against Cook pre-petition.  Plaintiffs are further informed and believe, and based thereon allege that USA Trust asserts a judgment lien on property of the Cook Estate.

14.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Hearn Pacific Corporation ("Hearn") at all times mentioned herein has had its principal place of business in Vacaville, California. Plaintiffs are unaware of where Hearn is incorporated. Plaintiffs are further informed and believe, and based thereon allege that Hearn obtained a Judgment against Cook pre-petition and that Hearn asserts a judgment lien on property of the Cook Estate.

### GENERAL ALLEGATIONS

15.    Original KPBC purports to be a California general partnership formed on May 31, 1983, to, among other things, own and operate the Sacramento Kings professional basketball team and develop a permanent arena, the Kings Arco Arena, for the team.

16.    The partnership of Original KPBC was amended and restated pursuant to an agreement effective as of April 1, 1991 ("KPBC-GP Agreement").  According to Exhibit B of the KPBC-GP Agreement, as of April 1, 1991, Original KPBC was comprised of the following general partners: (a) Joseph and Nancy Benvenuti, jointly dba JB Company (48%); (b) C,C,M&L, a California general partnership (43%); and (c) Pan Pacific, Ltd., a California limited partnership (9%).  Cook held a general partner interest in C,C,M&L.

17.    Plaintiffs are informed and believe, and based thereon allege, that in 1992, a 53% interest in both the Sacramento Kings and the Kings Arco Arena were sold to the Maguire Thomas partners.  Original KPBC retained a 47% limited partnership interest in the Team LP. C,C,M&L was also a member of the 47% limited partnership interest in the Arena LP.  Plaintiffs are informed and believe, and based thereon allege that the Maguire Thomas partners held a 53% general partnership interest in the Team LP as well as the Arena LP.  On March 15, 1992, in connection with that sale, both the Team LP and the Arena LP entered into separate limited partnership agreements (respectively, "Team LP Agreement" and "Arena LP Agreement").

18.    Plaintiffs are informed and believe, and based thereon allege, that (a) in December 1997, the Maguire Thomas partners sold a 24% general partnership interest in both the Team LP

and the Arena LP to an entity controlled by the Maloof family ("Maloof Entity") with an option in 1999 for the Maloof Entity to purchase the remaining 29% general partnership interest and (b) the option was exercised in July 1999, resulting in the Maloof Entity owning the entire 53% general partnership interest in the Team LP and the Arena LP.

19. Sometime in the late 1990s, Cook purportedly became the sole partner of the Original KPBC and at all times subsequent has purportedly remained the sole partner of the Original KPBC.

20. Plaintiffs are informed and believe, and based thereon allege, that in 2005, the Team LP and Arena LP were each comprised of a 53% general partner interest and a 47% limited partnership interest of which Cook held a 5.75% limited partnership interest through Original KPBC.

21. Plaintiffs are informed and believe, and based thereon allege, that in 2005, Cook became aware that JB Company wished to sell a portion of its limited partnership interests in the Team LP and the Arena LP. Cook claims he was interested in purchasing those interests and commenced negotiations with JB Company for those interests. Cook, however, purportedly did not want other investors in the Team LP and Arena LP, particularly the Maloofs, learning of Cook's intentions for fear that the Maloofs would want to buy the additional interests. Cook approached Omni for a loan in 2005, but Omni denied Cook's loan request at that time.

22. Plaintiffs are informed and believe, and based thereon allege, that in 2006, Cook again approached Omni for a loan to purchase an additional limited partnership interest in the Team LP and the Arena LP. This time Omni agreed to fund a $10 million loan on certain terms and conditions, including that the loan be secured by a lien against the LP Interests.

23. As both Omni and Cook were aware, however, such a loan could not be secured by the LP Interests absent consent of the other investors in the Team LP and Arena LP, because of restrictions on the transfer (including any encumbrance) of the LP Interests.

First Amended Complaint

24.   Specifically, sections 7.1 and 7.2 on pages 14 and 15 of both the Team and the Arena LP Agreements provide [the language that differs between the two documents is noted in brackets, with the language in the Arena LP Agreement in brackets]:

Section 7.1.   <u>Restrictions on Transfer</u>.

A.   Except as provided in Sections 7.2 and 7.3 hereof, no sale, assignment, transfer, encumbrance or hypothecation (herein referred to as a "<u>Transfer</u>") shall be made by a Partner of the whole or any part of its or his Partnership interest (including, but not limited to, its or his interest in the capital or profits of the Partnership).  In addition to the restrictions set forth above, each Limited Partner agrees, on behalf of and as agent for each present and future owner of any direct or indirect interest in such Limited Partner (including, without limitation, any person or entity who holds an interest in such Limited Partner through one or more partnerships, trusts or corporations) that no such owner shall Transfer the whole or any part of its interest in such Limited Partner without the prior written consent of the General Partner.  In addition, and notwithstanding any other provision of this Agreement, no Transfer shall be made of any direct or indirect interest in any Partner if such Transfer would breach or violate any agreement, covenant, law, ordinance, rule or regulation to which the Partnership is subject (including, without limitation, any agreement with, or rule or regulation of, the National Basketball Association).

B.   No Transfer in violation of the provisions hereof shall be valid or effective for any purpose, and no consent to one or more of the same shall be deemed consent to any other of the same.

Section 7.2.   <u>Permitted Assignments</u>.  Notwithstanding the provisions of Section 7.1 hereof:

A.   The General Partner shall have the right to Transfer all or part of its interest in the Partnership to an Affiliate of the General Partner (and such Transfer shall not be subject to the provisions of Section 7.3 below).

B.   Each Limited Partner shall have the right to Transfer all or part of its or his interest in the Partnership to an Affiliate of such Limited Partner and each owner of a direct or indirect interest in a Limited Partner shall have the right to Transfer such interest to an Affiliate of such owner (and such assignment or transfer shall not be subject to the provisions of Section 7.3 below).

C.   Each Partner shall have the right to undertake an assignment of its interest in the Partnership not otherwise permitted under A or B above provided it or he complies with the requirements of Section 7.3 below.

D.   Notwithstanding the foregoing, no Transfer shall be made [by a Partner] pursuant to the foregoing provisions of this Section 7.2 or the provisions of Section 7.3 hereof unless, concurrently with such Transfer, a Transfer of an equal Partnership Percentage in the Arena [Team] Partnership (or in the case of the Transfer of an indirect interest in the Partnership, a Transfer of an equal indirect interest in the Arena [Team] Partnership) shall be made by such Partner or by an Affiliate of such Partner to the same transferee or to a person or entity owned and controlled in the same ratio and to the same degree as such transferee (the

intention being that no Transfer should be made pursuant to this Section 7.2 or Section 7.3 below which causes the ultimate ownership in this Partnership and the Arena [Team] Partnership to be different).  Without limitation on the foregoing, concurrently with an offer pursuant to Section 7.3 hereof, the "Selling Partner" or its Affiliate must make a similar offer under Section 7.3 of the Arena [Team] Partnership, and no transfer may be made pursuant to Section 7.3 hereof unless concurrently therewith an equal Partnership Percentage in the Arena [Team] Partnership shall be transferred to the same transferee or to a person or entity owned and controlled in the same ratio and to the same degree as such transferee.

[Section 7.3 provides for a Right of First Opportunity regarding an assignment of a Partnership interest not permitted under Section 7.2A or 7.2B]

25.    Section 1.7 of the Team and Arena LP Agreements provides in relevant part:

As used herein, the following terms have the following meanings:

A. "Affiliate(s)" of a person or an entity means (1) any "Family Member" of such person or entity; (2) any person or entity controlling, controlled by or under common control with such person or entity; (3) any Partner in the Partnership; and (4) any person or entity owning or controlling 10% or more of the outstanding voting securities or beneficial interests of such person or entity.
. . .

E. "Limited Partner(s)" means Kings Professional Basketball Club, a California general Partnership ("KPBC"), [Arco Arena, Ltd., a California limited partnership ("AAL")] and its successors and assigns as a limited partner[(s)] in this Partnership.

F. "Partners" means the General Partner and the Limited Partners [Partner(s)].

G. "Partnership" means this partnership.

26.    Section 10.5 of the Team and Arena LP Agreements provides: "This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of California."

27.    Article 5 of the National Basketball Association ("NBA") Constitution prohibits the transfer or encumbrance of any direct, indirect, contingent, or convertible interest of a person or in an entity that has been granted the right to organize and operate a professional basketball team to play in the NBA without complying with certain requirements as set forth in Article 5. Article 5 states that no transfer shall become effective unless approved by the NBA pursuant to a specified application, investigation, and approval consideration process.

28.     Omni and Cura knew of the restrictions contained in Section 7.1 of the Team LP and Arena LP Agreements prior to entering into the loan transaction with Cook. Due to Cook's alleged desire for secrecy regarding his intent to purchase the additional limited partnership interests, Cook did not want Omni to inform other limited partners or the general partner of the Team LP or the Arena LP of the loan from Omni or of the proposed encumbrances of the LP Interests, or to otherwise seek the necessary consents and approvals.

29.     During the loan negotiation process, Omni expressed concern to Cook about the restrictions and prohibitions imposed on transfer and encumbrance of the LP Interests under Section 7.1. Rather than rejecting Cook's loan request because the restrictions on transfer in Section 7.1 could not be met, in June 2006 Omni proceeded with the loan transaction under a complicated loan structure created by Omni, which was designed to sidestep the application and approval process of the Team LP and Arena LP Agreements and attempt to accomplish indirectly through subterfuge and deception what could not be accomplished directly. The loan structure was designed to create a new "affiliate" of Original KPBC, namely the KPBC Joint Venture, in which Cura would be a partner, in an effort to fit within a purported exception to the notice and consent provisions of the Team LP and Arena LP Agreements. Omni required Cook to agree to the complicated and deceptive loan structure as a condition to obtain the loan.

30.     Plaintiffs are informed and believe, and based thereon allege, that Omni did not consider that the provisions of Section 7.1, which incorporate the NBA rules and regulations and also required any transfer first be approved by the NBA, did not contain an "affiliate" exception.

31.     More specifically, under the complex and intentionally confusing loan structure put together by Omni (the "Omni Loan"), as a condition to funding the $10 million loan, Cura and Cook entered into a Joint Venture Agreement ("JV Agreement"), dated June 20, 2006, purportedly creating the KPBC Joint Venture, for the specific purpose of taking ownership and control of Original KPBC and the LP Interests, and to acquire additional LP Interests. A copy of the JV Agreement is attached to this Complaint as Exhibit A. Cook executed the JV Agreement in his individual capacity only, and not in any capacity with respect to the Original KPBC. The

joint venture was named "KINGS PROFESSIONAL BASKETBALL CLUB, A CALIFORNIA GENERAL PARTNERSHIP", the exact same name of the Original KPBC.  All of Cook's ownership interests in the Original KPBC purportedly were transferred to KPBC Joint Venture, with the Original KPBC retaining title to the LP Interests. In addition, the Original KPBC's ownership interests in the LP Interests was purportedly transferred to the KPBC Joint Venture. KPBC Joint Venture then purportedly borrowed the $10 million from Omni, though the loan funds were released to the Bob Cook Company, LLC ("BCC"), another entity owned by Cook. No portion of the Omni Loan was actually released to the KPBC Joint Venture.

32.    Also as part of the Omni Loan structure, Cook and Cura entered into a Terminable and Limited Voting Trust Agreement ("Voting Trust"), dated June 1, 2006, under which Cook purported to transfer to Cura, as trustee, "all of COOK's voting rights and/or authority as General Partner of KPBC to transfer, sell, convey, or encumber: a) any interest in KPBC; or b) any asset of KPBC ."  Voting Trust, paragraph 5.  A copy of the Voting Trust is attached to this Complaint as Exhibit B.  Cura and Cook further agreed that "so long as there is any debt obligation of KPBC [defined as the Original KPBC in Paragraph 1 of the Voting Trust] outstanding in favor of OMNI, CURA shall remain as Trustee of COOK'S *KPBC Rights* (the "Trust Term")."  Voting Trust, paragraph 6.  The Voting Trust is signed by Cook as an individual only, not by Cook in any capacity with respect to the Original KPBC or the KPBC Joint Venture.

33.    Under the loan transaction designed by Omni, the KPBC Joint Venture was the sole borrower.  The KPBC Joint Venture, through Cook as its "authorized general partner," executed a $10 million Promissory Note dated June 20, 2006, in favor of Omni as well as a Loan Agreement, Commercial Security Agreement, and two Pledge Agreements.  On August 9, 2006, a UCC-1 financing statement ("Financing Statement") was filed with the California Secretary of State naming Omni as the secured party and naming as the debtor the "KINGS PROFESSIONAL BASKETBALL CLUB" and listing "GENERAL PARTNERSHIP" as the debtor's type of organization.  No UCC-1 financing statement was filed in Cook's name with respect to the Omni Loan transaction.

34.    An Addendum to Loan Agreement was executed by Omni on June 20, 2006, and by the KPBC Joint Venture, through Cook as its "authorized general partner," on June 19, 2006. A copy of the Addendum to Loan Agreement is attached to this Complaint as <u>Exhibit C</u>.  The Addendum to Loan Agreement recites that the loan proceeds were to be funded in two different stages: (a) a first distribution "at Closing" of $5,350,000 (the "First Distribution") consisting of $400,000 to be paid to Omni in loan fees, costs, and documentation, $2,400,000 impounded by Omni as an interest reserve to cover interest payments on the loan for 24 months, and $2,550,000 released to KPBC Joint Venture as the borrower; and (b) $4,650,0000 in a second distribution (the "Second Distribution") to be funded at a later date.  Plaintiffs are informed and believe, and based thereon allege the $2,550,000 in net loan proceeds from the First Distribution was all funded through cashier's checks payable by Omni to BCC.

35.    Plaintiffs are informed and believe, and based thereon allege that the $2,400,000 earmarked as an "interest reserve" was invested in shares in Omni and ultimately the $2,400,000 plus investment income was applied by Omni to pay interest on the Omni Loan.

36.    In April 2007, the Second Distribution was funded.  Plaintiffs are informed and believe, and based thereon allege that the Second Distribution was comprised of $140,000 paid to Omni for loan fees and costs, $2,550,000 paid directly by wire transfer from Omni to BCC and $2,000,000 paid by wire transfer directly from Omni to Lighthorse Ventures LLC ("Lighthorse"). Plaintiffs are informed and believe, and based thereon allege that the $2,000,000 wired to Lighthorse was for an investment/loan held in the name of Cook individually.

37.    Plaintiffs are informed and believe, and based thereon allege, that (a) none of the proceeds of the Omni Loan were paid to the purported borrower, the KPBC Joint Venture, and (b) none of the loan proceeds were used to purchase any additional interests in the Team LP or Arena LP.

38.    No notice was given to and no application for approval or consent was made to the general partner or any other limited partners of the Team LP or the Arena LP for the purported (a) creation of KPBC Joint Venture, (b) transfer of any interests in the Original KPBC to KPBC Joint

Venture, (c) transfer of any of the Original KPBC's rights to Cura under  the Voting Trust, (d) transfer of the LP Interests, either directly or indirectly, to the KPBC Joint Venture, or (e) encumbrance of the LP Interests in favor of Omni.

39.    The entity which owns the general partnership interest in the Team LP is the Royal Kings Limited Partnership ("RKLP") and the entity which owns the general partnership interest in the Arena LP is the Royal Kings Arena Limited Partnership ("RKALP").  Plaintiffs are informed and believe, and based thereon allege, that RKLP and RKALP contend that such actions and transfers as alleged above violated the Team LP and Arena LP Agreements, are invalid and ineffective, and caused RKLP and RKALP damage at the time of such transfers and continue to cause RKLP and RKALP damage.  On December 8, 2011, RKLP and RKALP filed Proofs of Claim in the Cook Chapter 11 Case, assigned Claim Nos. 25 and 24 respectively, preserving their rights.

40.    No notice was given to and no application for approval or consent was made to the NBA for the purported (a) creation of KPBC Joint Venture, (b) transfer of any interests in the Original KPBC to the KPBC Joint Venture, (c) transfer of any of the Original KPBC's rights to Cura under the Voting Trust, (d) transfer of the LP Interests, either directly or indirectly, to the KPBC Joint Venture, or (e) encumbrance of the LP Interests in favor of Omni.  Plaintiffs are informed and believe, and based thereon declare that the NBA contends that such actions violated the NBA Constitution and rules, are invalid and ineffective, caused the NBA damage at the time of such transfers and continue to cause the NBA damage, and could lead to forfeiture of the LP Interests and to forfeiture of the entire membership interest of the Team LP and the Arena LP in the NBA.  On December 9, 2011, the NBA filed a Proof of Claim in the Cook Chapter 11 Case, assigned Claim No. 27, preserving its rights.

41.    Other than executing the JV Agreement in June 2006, neither Cura nor Cook took any action of any nature to form, operate and/or ratify KPBC Joint Venture.  Many actions taken, or failures to act, by Cook and/or Cura since June of 2006, are inconsistent with the existence of KPBC Joint Venture as a separate legal entity, including but not limited to the following:

(a)     No separate document was signed transferring any interests of Cook in the Original KPBC into KPBC Joint Venture.

(b)     KPBC Joint Venture has conducted no business, has had no employees, has neither sought nor received a separate tax identification number or business license, has filed no federal or state tax returns, and has issued no K-1s to its purported joint venture partners.

(c)     No other formation documents have been executed, no meetings of the KPBC Joint Venture partners have been called or held and no resolutions have been passed.

(d)     The JV Agreement itself allocates no joint venture income or losses to Cura, and the KPBC Joint Venture is to terminate when the Omni Loan is repaid.

(e)     When Omni issued 1099s for interest on the Omni interest reserve account, Omni issued the 1099s using the tax identification number for the Original KPBC.

(f)     When KPBC Joint Venture's involuntary bankruptcy petition was filed, the tax identification number for the Original KPBC was used on the involuntary petition.

(g)     The $10 million Omni Loan was paid in installments as described above either to (1) BCC, a separate entity owned by Cook, or (2) to Lighthorse as an investment on behalf of Cook. No portion of the loan was paid to the KPBC Joint Venture.

42.     Plaintiffs are informed and believe, and based thereon allege, that in September 2006, the Team LP and Arena LP purchased a portion of the JB Company limited partnership interests in the Team LP and the Arena LP.  As a result, a redistribution of those limited partnership interests among the other limited partners occurred, resulting in the LP Interests increasing from 5.75% to 7.06%.

43.     The Omni Loan was not repaid as provided for in the loan documents and went into default.  KPBC Joint Venture, through Cook as its "Authorized General Partner," and Omni executed a Forbearance Agreement dated April 27, 2009.  The Omni Loan was not repaid pursuant to the terms of the Forbearance Agreement.

44.     Plaintiffs are informed and believe, and based thereon allege, that in 2010, Omni, claiming entitlement to a security interest directly in the LP Interests, commenced procedures for

a personal property foreclosure sale of the LP Interests under Article 9 of the Uniform Commercial Code.  On September 10, 2010, WT Capital Lender Services signed a Notification of Disposition of Collateral which set a foreclosure sale of the LP Interests for September 30, 2010. That foreclosure sale did not proceed.  Plaintiffs are informed and believe, and based thereon allege, that thereafter negotiations took place between Cook and Omni for a "strict foreclosure" agreement, pursuant to which Cook purportedly would transfer to Omni all interests in the Team LP and Arena LP.  Plaintiffs are informed and believe, and based thereon allege, that the "strict foreclosure" transaction did not go through and there was no transfer of the LP Interests to Omni.

45.     On or about November 15, 2010, counsel for Omni – Powell Pool, a Professional Corporation -- sent a letter to RKLP and RKALP, as the general partners of Team LP and the Arena LP, respectively. In the November 15, 2010 letter Powell Pool stated that it represented "KINGS PROFESSIONAL BASKETBALL CLUB, a California General Partnership," which purportedly owned the LP Interests, which then amounted to 7.06% of Team LP and 7.06% of Arena LP. While it is unclear whether Powell Pool was writing on behalf of Original KPBC or KPBC Joint Venture, the letter stated that "KPBC" was providing "formal notice pursuant to Section 7.3" of the Team LP Agreement and the Arena LP Agreement of KPBC's intentions to sell the LP Interests to an Omni-controlled entity, Kings Professional Basketball LLC, for $11.8 million in cash, and offering RKLP, RKALP and the other limited partners the first opportunity to purchase the LP Interests for the same price. Plaintiffs are informed and believe, and based thereon allege, that the sale of the LP Interests never was completed.

46.     Plaintiffs are informed and believe, and based thereon allege that the neither RKLP, RKALP or any of the other limited partners of Team LP and Arena LP knew about the breaches of the Team LP and Arena LP Agreements in June 2006 when Cook, Cura, the KPBC Joint Venture, and Omni entered into the various agreements surrounding the Omni Loan transaction because Cook, Cura, the KPBC Joint Venture, and Omni specifically did not want to notify RKLP, RKALP or any of the other limited partners of Team LP and the Arena LP of the transaction with Omni.  Plaintiffs are informed and believe, and based thereon allege, that RKLP,

RKALP and the other limited partners of the Team LP and the Arena LP first learned of the transfers and encumbrances in connection with the Omni Loan transaction upon reviewing the November 15, 2010 from Powell Pool described above. Plaintiffs are informed and believe, and based thereon allege, that the NBA did not learn of the transfers and encumbrances in connection with the Omni transaction until well after November 15, 2010,

47.    On February 15, 2011, Omni filed a Complaint against "Kings Professional Basketball Club, a California general partnership" and against Cook, individually and as general partner of the Original KPBC, in Santa Cruz County (Superior Court Action CV 170294) to enforce Omni's purported rights under the Omni Loan documents (the "Santa Cruz County Action"). It is not clear if by naming "Kings Professional Basketball Club, a California general partnership" as a defendant Omni intended to sue the Original KPBC or KBPC Joint Venture. The Santa Cruz County Action requests, among other relief, that a receiver be appointed to sell the LP Interests.

48.    On December 9, 2011, Omni caused to be filed in the Cook Chapter 11 Case a Proof of Secured Claim, asserting a claim of $15,032,454.11 as of November 1, 2011 (the "Omni Claim"). The Omni Claim was assigned Claim No. 26 and asserts that it is secured by property worth $20,000,000. The Omni Claim includes unpaid late charges of $432,500.00, default interest at the rate of 16.50%, post-petition interest, and "Other Unpaid Fees/Charges" of $398,749.39.

49.    On March 13, 2012, Cura filed an adversary proceeding in the KPBC Joint Venture bankruptcy case, designated Adversary Proceeding No. 12-02117, against the Trustee and the Original KPBC seeking a declaration that: (1) Cook's ownership interests in Original KPBC have been transferred to KPBC Joint Venture; and (2) Cura "has the sole and exclusive authority to market, sell, transfer and convey the LP Interests and to direct all profits from a sale of the LP Interests that would otherwise be distributed to Cook as general partner of the Original KPBC to be distributed to the KPBC Joint Venture Bankruptcy Estate."

First Amended Complaint

**FIRST CLAIM FOR RELIEF**
**[Avoidance of transfers by Cook in violation of the Team LP and Arena LP Agreements
and NBA Constitution (11 U.S.C. §544(b))]**
**(Against KPBC Joint Venture and Cura)**

50.　Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

51.　The purported transfer to the KPBC Joint Venture of Cook's ownership in the Original KPBC, which by definition included a transfer of the right to ownership and control of the LP Interests was, as of the  Cook Petition Date, voidable under applicable law by a creditor holding an unsecured claim allowable under 11 U.S.C. §502.

52.　Section 7.1 of the Team  and Arena LP Agreements, respectively, provides, among other things, that (i) "no sale, assignment, transfer, encumbrance or hypothecation (herein referred to as a "Transfer")" of any partnership interest in the Team LP or Arena LP shall be made other than in accordance with the provisions of Section 7.2 and 7.3; (ii) no owner of a Limited Partner in the Team LP or Arena LP shall Transfer the whole or any part of its ownership interest in the limited partner without the prior written consent of the General Partner of Team LP and Arena LP (RKAP and RKALP ); and (iii) no Transfer shall be made of any direct or indirect interest in any Partner if such Transfer would breach or violate any agreement, covenant, law, ordinance, rule or regulation, to which the Partner is subject, explicitly including the NBA Constitution. Section 7.1.B provides that no Transfer in violation of the provisions of Section 7.1 shall be effective for any purpose.

53.　Section 7.2 of the Team and Arena LP Agreements, respectively, provides, among other things, that (i) each Limited Partner shall have the right to Transfer all or part of its Limited Partner interest in the Team LP or Arena LP to an "Affiliate" of such Limited Partner; and (ii) each owner of a direct or indirect interest in a Limited Partner shall have the right to Transfer such interest to an "Affiliate" of such owner. "Affiliate" is defined under the Team LP and Arena LP Agreements as:

(1) any "Family Member" of such person or entity; (2) any person or entity

controlling, controlled by or under common control with such person or entity; (3) any Partner in the Partnership; and (4) any person or entity owning or controlling 10% or more of the outstanding voting securities or beneficial interests of such person or entity.

54.     Section 7.3 of the Team and Arena LP Agreements provides for a right of first opportunity for the General Partner and remaining Limited Partners of the Team LP and Arena LP in the event that a Limited Partner desires to assign all or part of his interest in the Team LP and Arena LP. Specifically, if a Limited Partner desires to assign all or part of its interest in the Team LP and Arena LP it must first provide notice to the General Partner (RKAP and RKALP) and each of the other Limited Partners and provide them the opportunity to purchase the interest being transferred under the requirements of Section 7.3.

55.     Article 5 of the NBA Constitution, which provides:

No Membership, nor any direct, indirect, contingent, or convertible interest therein (regardless of the size of the interest), may be sold, pledged, hypothecated, assigned, or otherwise transferred or encumbered (each a "transfer") in whole or in part, directly or indirectly, except in accordance with and subject to the [] provisions of this Article 5.

Article 5 goes on to provide an extensive notice and approval process before any "transfer" of a Membership interest can occur.

56.     The purported transfer to the KPBC Joint Venture of Cook's ownership in the Original KPBC, including transfer of the right to ownership and control of the LP Interests, is avoidable by the Trustee and/or the Original KPBC pursuant to 11 U.S.C. §544(b)(1) on the following grounds:

a.   The purported transfer of the LP Interests to the KPBC Joint Venture violates the requirement under Section 7.1 of the Team LP and Arena LP Agreements, which prohibits a transfer of any limited partnership in the Team LP and Arena LP other than in accordance with Sections 7.2 and 7.3. The transfer violates Section 7.2 because the transfer was not made to an "Affiliate."  The KPBC Joint Venture is not a true "Affiliate" of Original KPBC, as defined under the Team LP and Arena

-17-

LP Agreements, but rather an entity conjured up and controlled by Cook's lender in order to keep the Omni Loan transaction secret and to attempt to avoid the notice and approval provisions contained in the Team LP and Arena LP Agreements. Moreover, neither Cook nor the Original KPBC provided notice to the General Partner of the Team LP and Arena LP (RKAP and RKALP) or any other Limited Partners of the transfer in violation of Section 7.3. Therefore, under Section 7.1B the purported Transfer of the LP Interests to the KPBC Joint Venture is ineffective.

b. The purported Transfer of Cook's ownership interest in the Original KPBC to the KPBC Joint Venture violates the requirement under Section 7.1 that no transfer of an ownership interest in any Limited Partner be made without the prior written consent of the General Partner (RKAP and RKALP). Neither RKAP nor RKALP were provided notice of the purported transfer and certainly neither entity gave their prior written consent. Under Section 7.1B the purported Transfer of Cook's ownership interest in the Original KPBC to the KPBC Joint Venture in ineffective.

c. Both of the purported transfers of the LP Interests and Cook's ownership interest of the Original KPBC to the KPBC Joint Venture violate Article 5 of the NBA Constitution, in that neither Cook nor Original KPBC provided notice to or received the approval of the NBA with respect to the purported transfers, as required under Article 5. As such, the purported transfers are in violation of Section 7.1 of the Team and Arena LP Agreements. Under Section 7.1B both transfers are ineffective.

d. The purported transfer of the LP Interests to the KPBC Joint Venture violates California law. More specifically, under California Corporations Code §15907.02(f), "[a] transfer of a partner's transferable interest in the limited partnership in violation of a restriction on transfer contained in the partnership agreement is ineffective as to a person having notice of the restriction at the time

First Amended Complaint

of transfer." California Corporations Code §15901.02(aj) provides that a transfer in this context "includes an assignment, conveyance, deed, bill of sale, lease, mortgage, creation of a security interest or encumbrance, gift, and transfer by operation of law." Here the transfer at issue was in violation of Sections 7.1 – 7.3 of the Team LP and Arena LP Agreements. Further, Cura, Omni and KPBC Joint Venture knew of the restrictions on transfer or encumbrance contained in Section 7.1 of the Team LP and Arena LP Agreements prior to entering into the transactions that created KPBC Joint Venture and encumbered the LP Interests.

e.  The purported transfer by Cook to Cura of all of Cook's voting rights and/or authority as the General Partner of Original KPBC pursuant to the Voting Trust violated Sections 7.1 – 7.3 of the Team LP and Arena LP Agreements, in that (i) the Voting Trust was entered into without providing notice to or obtaining the approval of RKAP and RKALP or any of the Limited Partners of Team LP or Arena LP, (ii) Cura is not an "Affiliate" of Original KPBC, (iii) such transfer was made in violation of Article 5 of the NBA Constitution, (iv) such transfer was made in violation of California Corporations Code §15907.02(f).

f.  The KPBC Joint Venture Agreement and the entire Omni Loan transaction is unenforceable as a matter of law because it was in unlawful contract pursuant to California Civil Code §§ 1667 and 1670.5 and other applicable law in that it was designed as part of a scheme to have Cook and Original KPBC transfer their interests to KPBC Joint Venture, Cura and/or Omni in secrecy and in violation of the Team LP and Arena LP Agreements, and in violation of the NBA Constitution.

First Amended Complaint

**SECOND CLAIM FOR RELIEF**
[Avoidance of Encumbrances In Violation of the Team LP and
Arena LP Agreements and NBA Constitution (11 U.S.C. §544(b))]
(Against Omni)

57.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

58.     As alleged above KPBC Joint Venture did not own the LP Interests and therefore could not have granted a security interest in the LP Interests to Omni. But even if KPBC Joint Venture did validly own the LP Interests, or if Original KPBC still owned the LP Interests, the purported transfer of a security interest in the LP Interests to Omni – regardless of which entity transferred it -- in and of itself would have been, as of the Cook Petition Date, voidable under applicable law by a creditor holding an unsecured claim allowable under 11 U.S.C. §502.

59.     The granting of a security interest in the LP Interests falls within the definition of "Transfer" under Section 7.1 of the Team LP and Arena LP Agreements, which definition includes "encumbrance or hypothecation." Further, it falls within the definition of "transfer" under Article 5 of the NBA Constitution, which provides that no Membership may be . . . pledged, hypothecated, assigned or otherwise transferred or encumbered." Further the granting of a security interest in the LP Interests falls within the definition of "Transfer" under California Corporations Code § 15901.02(aj), applicable to Cal. Corp. Code § 15907.02(f), which provides that "Transfer" includes "creation of a security interest or encumbrance."

60.     The purported granting of a security interest in the LP Interests – whether by Original KPBC or by KPBC Joint Venture -- to Omni is avoidable by the Trustee and/or the Original KPBC pursuant to 11 U.S.C. §544(b)(1) for at least the following reasons:

     a.   The transfer of a security interest in the LP Interests to Omni violates Section 7.1 of the Team LP and Arena LP agreements in that (i) it constitutes an unauthorized transfer of an interest in the LP Interests without the prior written consent of the General Partners of both entities (RKAP and RKALP) and (ii) it violates Article 5 of the NBA Constitution in that it constitutes a transfer of a Membership interest

-20-

without giving notice and going through the approval process set forth in Article 5, which constitutes an independent violation of Section 7.1. Under Section 7.1B the transfer is ineffective.

b. The transfer of a security interest in the LP Interests to Omni violates California Corporations Code §15907.02(f) in that it constitutes a transfer of a limited partner's interest in a limited partnership in violation of a restrictive covenant (Section 7.1) in the partnership agreement (the Team LP and Arena LP) and, hence, is ineffective. Cal. Corp. Code § 15907.02(f).

c. The loan agreements and agreement to create the KPBC Joint Venture are improper and unlawful contracts in that they are designed to cause Cook and Original KPBC to breach their agreements with Team LP, Arena LP, and the NBA.

### THIRD CLAIM FOR RELIEF
**[Declaratory Relief by both Plaintiffs]**
**(Against KPBC Joint Venture, Cura and Omni)**

61.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

62.    An actual controversy exists between Plaintiffs, on the one hand, and KPBC Joint Venture, Cura, and Omni, on the other hand, regarding whether KPBC Joint Venture is and ever was a proper joint venture under California law.

63.    Plaintiffs contend that: (a) KPBC Joint Venture is a sham entity that was created for the sole purpose of facilitating Omni's financing scheme designed to avoid compliance with Section 7.1 – 7.3 of the Team LP and Arena LP Agreements; (b) KPBC Joint Venture was never intended by Cook, Cura, or Omni to operate as a legal entity and has never had legal existence; (c) the JV Agreement should be deemed void and of no legal effect; (d) all documents purported to be signed on behalf of the KPBC Joint Venture shall be deemed to be void and of no legal effect; and (e) as a consequence, Cook continues to own Cook's Original KPBC ownership

interests and such interests belong to the Cook Estate free of any ownership interest by KPBC Joint Venture and/or Cura, and free of any encumbrance by Omni.

64.    Plaintiffs are informed and believe, and based thereon allege that KPBC Joint Venture, Cura, and Omni dispute these positions. Cura's contrary position is reflected in its Complaint for Declaratory Relief filed in the bankruptcy case of *Kings Professional Basketball Club, a California General Partnership, a Joint Venture*, United States Bankruptcy Court, Eastern District of California, Case No. 11-44952, Adv. No. 12-02117.

65.    Plaintiffs seek, and are entitled to obtain, a declaration from the Court that the contentions of Plaintiffs as set forth above are correct.

66.    A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs, KPBC Joint Venture, Cura, and Omni may ascertain their rights and duties.  It will be in the best interests of equity and judicial expediency that all issues concerning these disputes be resolved at this time.

## FOURTH CLAIM FOR RELIEF
### [Declaratory Relief by both Plaintiffs]
### (Against KPBC Joint Venture, Cura and Omni)

67.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

68.    To the extent the Court determines that KPBC Joint Venture is a proper legal entity under California law, akin to a general partnership, Plaintiffs contend that (a) KPBC Joint Venture is not an "Affiliate" of Original KPBC or Cook within the meaning of Section 7.2 of the Team LP and Arena LP Agreements; (b) Cura is a general partner of KPBC Joint Venture and is therefore jointly and severally liable for all debts of  KPBC Joint Venture, including the Omni Loan and (c) to the extent the Cook Estate satisfies, or collateral posted by Cook  to secure the Omni Loan is used to satisfy, all or a portion of the Omni Loan or other debt of the KPBC Joint Venture, the Cook Estate is entitled to contribution and indemnity from Cura for 50% of any such amount.

First Amended Complaint

69.     Further, to the extent the Court determines that KPBC Joint Venture is a proper legal entity under California law, akin to a general partnership, an actual controversy exists between Plaintiffs, on one hand, and KPBC Joint Venture, Cura, and Omni, on the other hand, regarding whether Cook's ownership interests in the Original KPBC were legally and properly transferred to the KPBC Joint Venture.

70.     Plaintiffs contend that Cook did not intend to transfer his ownership interest in the Original KPBC to KPBC Joint Venture and that no document legally effectuated such transfer or conveyance.

71.     Plaintiffs are informed and believe, and based thereon allege that KPBC Joint Venture, Cura, and Omni dispute these positions. Cura's contrary position is reflected in its Complaint for Declaratory Relief filed in the bankruptcy case of *Kings Professional Basketball Club, a California General Partnership, a Joint Venture*, United States Bankruptcy Court, Eastern District of California, Case No. 11-44952, Adv. No. 12-02117.

72.     Plaintiffs seek, and are entitled to obtain, a declaration from the Court that the contentions of Plaintiffs as set forth above are correct.

73.     A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs, KPBC Joint Venture, Cura, and Omni may ascertain their rights and duties.  It will be in the best interests of equity and judicial expediency that all issues concerning these disputes be resolved at this time.

## FIFTH CLAIM FOR RELIEF
### [Avoidance of Encumbrances by Both Plaintiffs (11 U.S.C. §544(a))]
### (Against Omni)

74.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

75.     At all relevant times herein Original KPBC was the sole owner of the LP Interests.

76.     A legal requirement for creation of a consensual security interest in the assets of the Original KPBC, including the LP Interests, is that the holder of such a security interest be granted such a security interest in a writing signed by Cook in his capacity as the sole general

partner of the Original KPBC.  No security interest was granted to Omni in a writing signed by Cook in his capacity as sole general partner of Original KPBC. Rather, Cook signed the Loan Agreement, the Addendum, Commercial Security Agreement, and the two Pledge Agreements on behalf of KPBC Joint Venture. Therefore Omni does not hold and never has held an enforceable security interest in the assets of the Original KPBC, including the LP Interests.

77.     As of the Cook Petition Date, Trustee can avoid the lien of any creditor who does not hold a perfected security interest in a debtor's assets under Bankruptcy Code §544(a).

78.     Omni filed a UCC-1 financing statement naming KINGS PROFESSIONAL BASKETBALL CLUB, a GENERAL PARTNERSHIP with the California Secretary of State on August 9, 2006, Filing No. 06-708092424783. However, that filing is not effective against Original KPBC because neither Cook nor the KPBC Joint Venture granted to Omni a security interest in Original KPBC's assets. Rather, a security interest was granted, if at all, to Omni by the KPBC Joint Venture, which did not own the assets of the Original KPBC.  Therefore, Omni had no valid security interest in Original KPBC's assets as of the Cook Petition Date.

79.     As of the Original KPBC Petition Date, the Original KPBC can avoid the lien of any creditor who does not hold a perfected security interest in a debtor's assets under Bankruptcy Code §544(a)(1).  The encumbrance of the assets of Original KPBC by Omni is avoidable by both the Trustee and the Original KPBC pursuant to 11 U.S.C. §544(a)(1).

**SIXTH CLAIM FOR RELIEF**
**[Avoidance of Encumbrances by Both Plaintiffs (11 U.S.C. §544(a))]**
**(Against Omni)**

80.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

81.     Plaintiffs are informed and believe, and based therein allege that as of the Cook Petition Date and the Original KPBC Petition Date, the Commercial Security Agreement, the two Pledge Agreements and the Financing Statement failed to describe or inadequately described in their collateral descriptions a lien on Cook's Original KPBC ownership interests.

82.     As of the Cook Petition Date, the Trustee can avoid the lien of any creditor who does not hold a perfected security interest in a debtor's assets under Bankruptcy Code § 544(a).

83.     As of the Original KPBC Petition Date, the Original KPBC can avoid the lien of any creditor who does not hold a perfected security interest in a debtor's assets under Bankruptcy Code §544(a).

84.     The encumbrance of Cook's Original KPBC ownership interests by Omni is avoidable by both the Trustee and the Original KPBC pursuant to 11 U.S.C.  §544(a)(1).

**SEVENTH CLAIM FOR RELIEF**
**[Preservation of Avoided Transfers or Liens (11 U.S.C. §551)]**

85.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

86.     Pursuant to 11 U.S.C. §551, the liens avoided pursuant to the Second, Fifth and Sixth Claims for Relief in this Complaint and the transfers avoided pursuant to the First Claim for Relief of this Complaint are to be preserved for the benefit of the Original KPBC bankruptcy estate (the "Original KPBC Estate") and/or the Cook Estate.

**EIGHTH CLAIM FOR RELIEF**
**[Disallowance of Claims until Disgorgement of Avoidable Transfers or Liens**
**(11 U.S.C. §502(d))]**
**(Against KPBC Joint Venture, Cura and Omni)**

87.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

88.     The Original KPBC is informed and believes, and based thereon alleges, that KPBC Joint Venture, Cura, and Omni received the benefit of avoidable transfers and liens that constituted avoidable transfers pursuant to 11 U.S.C. §544, which are recoverable by the Original KPBC from KPBC Joint Venture, Cura, and Omni under 11 U.S.C. §550.

89.     The Original KPBC is informed and believes, and based thereon alleges, that KPBC Joint Venture, Cura, and Omni received the benefit of the avoidable transfers and liens which are avoidable and/or recoverable by the Original KPBC from KPBC Joint Venture, Cura, and Omni.

90.     Pursuant to 11 U.S.C. § 502(d), any claim that KPBC Joint Venture, Cura, and Omni may have against the Original KPBC Estate and/or the Cook Estate, whether such claims are held jointly, individually, or otherwise, including the Omni Claim, must be disallowed in full unless and until KPBC Joint Venture, Cura, and Omni have disgorged such to the Original KPBC Estate.

**NINTH CLAIM FOR RELIEF**
**[Objection to and Disallowance of Claim by Trustee (11 U.S.C. § 502(b)(1))]**
**(Against Omni)**

91.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

92.     Claims shall be disallowed under 11 U.S.C. §502(b)(1) to the extent unenforceable against the debtor and property of the debtor under applicable law.

93.     As alleged above, the Debtor here, Cook, is not obligated to Omni on the Omni Loan. Cook is not the obligor to Omni on the Promissory Note or the Loan Agreement that are attached to Omni's proof of claim. Rather, the borrower on those documents, purportedly, is the KPBC Joint Venture, which, as alleged above, is not a valid legal entity.

94.     Further, the loan proceeds under the Omni Loan were not paid to Cook, but rather to BCC and Lighthouse.

95.     Further, to the extent that Omni had a claim against Cook, it would be unsecured. As alleged in the First Claim for Relief above, the purported transfer of the Cook's ownership interest in Original KPBC and the LP Interests to KPBC Joint Venture should be avoided, as the purported transfers were made without notice to and the consent of RKAP, RKALP, the other limited partners of Team LP and Arena LP, in violation of the Team LP and Arena LP Agreements and without notice to and the consent of the NBA in violation of the NBA Constitution. As a result KPBC Joint Venture could not have granted Omni a security interest in either Cook's ownership interest in Original KPBC or in the LP Interests.

96.     Further, Cook never granted a security interest in his ownership interests of Original KPBC to Omni.

97.     Further, neither Cook nor Original KPBC granted a security interest in the LP Interests to Omni.

98.     Even if Cook or Original KPBC had granted a security interest in the LP Interests to Omni such encumbrances would be invalid for the reasons set forth in the Second, Fifth and Sixth Claims for Relief above.

99.     As such, to the extent Omni has any claim against Cook it is unsecured.

100.    Accrual of interest at default rates and late charges are unenforceable under California law, including under California Civil Code §1671(b), when charged at a rate in excess of that designed to reimburse the lender for actual costs and expense incurred in servicing the defaulted obligation.  Under 11 U.S.C. §506(a)(1), post-petition interest and attorney's fees are not allowable when the claim is undersecured or unsecured.

101.    Based on the Claims for Relief above, the Trustee contends that any lien asserted by Omni on property of the Cook Estate is unenforceable and therefore any claim by Omni against the Cook Estate is unsecured, thus precluding any recovery of post-petition interest, attorney's fees and other costs.

102.    The Trustee is informed and believes, and based thereon alleges, that the unpaid late charges and default interest charged by Omni and included in the Omni Claim are in excess of that permitted under California law.

103.    To the extent that the Omni Claim is allowed at all it should be disallowed to the extent it includes (a) post-petition interest, costs and attorney's fees and (b) late charges and default interest in excess of that allowed by California law, all subject to proof at trial.

**TENTH CLAIM FOR RELIEF**
**[Declaratory Relief by both Plaintiffs Regarding Allowance of Claim of TMI]**
**(Against TMI)**

104.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

105.    On December 6, 2011 TMI caused to be filed in the Cook Chapter 11 Case a Proof of Secured Claim, asserting a secured claim in the amount of $1,053,984.92 (the "TMI Claim").

First Amended Complaint

The TMI Claim was assigned Claim No. 20 and asserts that it is secured by a judgment lien on property with "Value Unknown".   Plaintiffs are informed and believe, and based thereon allege that TMI contends it claim is secured by a judgment lien on Cook's ownership interest in the Original KPBC, including the LP Interests,  created by service of a order for examination of judgment debtor and a charging order (the "TMI Liens") .

106.    As alleged above, pursuant to 11 U.S.C. §551, the liens and transfers avoided pursuant to Claims for Relief set forth in this Complaint are to be preserved for the benefit of the Cook Estate.  Plaintiffs contend that the liens preserved for the benefit of the Cook Estate are senior to and entitled to payment ahead of the TMI Liens.

107.    Plaintiffs are informed and believe, and based thereon allege that TMI disputes this position.

108.    An actual controversy exists between Plaintiffs, on one hand, and TMI, on the other hand, regarding the allowance of the TMI Claim and the priority of the TMI Lien.

109.    Plaintiffs seek, and are entitled to obtain, a declaration from the Court that the contentions of Plaintiffs as set forth in this Claim for Relief above are correct.

110.    A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs and TMI may ascertain their rights and duties.  It will be in the best interests of equity and judicial expediency that all issues concerning these disputes be resolved at this time.

**ELEVENTH CLAIM FOR RELIEF**
**[Declaratory Relief by both Plaintiffs Regarding Allowance of Claim of USA Trust]**
**(Against USA Trust)**

111.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

112.    In his Schedule D, Cook scheduled the USA Trust as holding a secured claim in the amount of $650,000 (the "USA Trust Claim").  Plaintiffs are informed and believe, and based thereon allege that USA Trust contends it claim is secured by a judgment lien on Cook's

ownership interests in the Original KPBC, including the LP Interests, created by service of an order for examination of judgment debtor (the "USA Trust Lien") .

113.    As alleged above, pursuant to 11 U.S.C. §551, the liens and transfers avoided pursuant to the Claims for Relief of this Complaint are to be preserved for the benefit of the Cook Estate.   Plaintiffs contend (a) that the liens preserved for the benefit of the Cook Estate are senior to and entitled to payment ahead of the USA Trust Lien, and (b) that the USA Trust Lien has expired.

114.    Plaintiffs are informed and believe, and based thereon allege that USA Trust disputes this position.

115.    An actual controversy exists between Plaintiffs, on one hand, and USA Trust, on the other hand, regarding the allowance of the USA Trust Claim and the priority of the USA Trust Lien.

116.    Plaintiffs seek, and are entitled to obtain, a declaration from the Court that the contentions of Plaintiffs as set forth in this Claim for Relief are correct.

117.    A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs and USA Trust may ascertain their rights and duties.  It will be in the best interests of equity and judicial expediency that all issues concerning these disputes be resolved at this time.

## TWELTH CLAIM FOR RELIEF
### [Declaratory Relief by both Plaintiffs Regarding Allowance of Claim of Hearn Pacific] (Against Hearn Pacific)

118.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

119.    Hearn Pacific caused to be filed in the Cook Chapter 11 Case a Proof of Secured Claim, asserting a secured claim in the amount of $397,704.08 (the "Hearn Pacific Claim").  The Hearn Pacific Claim was assigned Claim No. 8 and asserts that it is secured by a lien on "unknown" property.   Plaintiffs are informed and believe, and based thereon allege that Hearn Pacific may contend its claim is secured by a judgment lien on Cook's ownership interests in the

Original KPBC, including the LP Interests,  created by filing of a personal property judgment lien with the office of the California Secretary of State on September 20, 2010  (the "Hearn Pacific Lien").

120.    As alleged above, pursuant to 11 U.S.C. §551, the liens and transfers avoided pursuant to the Claims for Relief of this Complaint are to be preserved for the benefit of the Cook Estate.   Plaintiffs contend (a) that the liens preserved for the benefit of the Cook Estate are senior to and entitled to payment ahead of the Hearn Pacific Lien, and (b) that the Hearn Pacific Lien does not attach to Cook's ownership interests in the Original KPBC or the LP Interests.

121.    Plaintiffs are informed and believe, and based thereon allege that Hearn Pacific disputes this position.

122.    An actual controversy exists between Plaintiffs, on one hand, and Hearn Pacific, on the other hand, regarding the allowance of the Hearn Pacific Claim and the priority of the Hearn Pacific Lien.

123.    Plaintiffs seek, and are entitled to obtain, a declaration from the Court that the contentions of Plaintiffs as set forth in this Claim for Relief are correct.

124.    A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs and Hearn Pacific may ascertain their rights and duties.  It will be in the best interests of equity and judicial expediency that all issues concerning these disputes be resolved at this time.

## ALTERNATIVE ALLEGATIONS

125.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the previous paragraphs alleged above, inclusive, as though set forth in full.

126.    Alternatively, Plaintiffs allege that as Cook is, and has been at least since 2005, the sole partner of the Original KPBC: (a) the Original KPBC is not, and has not been since Cook became the sole general partner, a separate legal entity; (b) that all assets, rights, claims and interests of the Original KPBC belong to Cook, became on the Cook Petition Date, and remain, part of the Cook Estate; and (c) that all liabilities of the Original KPBC are liabilities of Cook.

First Amended Complaint

127.    All claims for relief pled in this Complaint on behalf of Original KPBC are hereby pled by Trustee on behalf of the Cook Estate and the Cook Estate seeks all of the same relief sought for Original KPBC in such claims for relief.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

1.    As to the Original KPBC Estate,

(a)  for judgment avoiding any transfer of the LP Interests or any other interests of Cook in the Original KPBC pursuant to 11 U.S.C. §§544(a)(1) and 544(b) and preserving any such transfers for the benefit of the Original KPBC Estate;

(b)  for judgment avoiding any encumbrance of the LP Interests or any other interests of Cook in the Original KPBC pursuant to 11 U.S.C. §§544(a)(1) and 544(b) and preserving any such encumbrances for the benefit of the Original KPBC Estate;

(c)  for a determination that any security interest granted by KPBC Joint Venture to Omni pursuant to the loan agreement, commercial security agreement, two pledge agreements and any other agreements between them is void and that Omni has no lien upon, or security interest in, the LP Interests or any other interests of the Original KPBC;

(d)  for a judgment granting recovery to the Original KPBC Estate from KPBC Joint Venture, Cura, and/or Omni, jointly and severally, for each avoidable transfer of the LP Interests or any other interests of Cook in the Original KPBC or its value pursuant to 11 U.S.C. §550; and

(e)  disallowing any claims KPBC Joint Venture, Cura, or Omni may have against the Original KPBC Estate unless KPBC Joint Venture, Cura, and Omni have disgorged such avoidable transfers.

2.    As to the Cook Estate,

(a)  for judgment avoiding any transfer of the LP Interests or any other interests of Cook in the Original KPBC pursuant to 11 U.S.C. §§544(a)(1) and 544(b) and preserving any such transfers for the benefit of the Cook Estate;

First Amended Complaint

(b)  for judgment avoiding any encumbrance of the LP Interests or any other interests of Cook in the Original KPBC pursuant to 11 U.S.C. §§544(a)(1) and 544(b) and preserving any such encumbrances for the benefit of the Cook Estate;

(c)  for a determination that any security interest granted by KPBC Joint Venture to Omni pursuant to the loan agreement, commercial security agreement, two pledge agreements and any other agreements between them is void and that Omni has no lien upon, or security interest in, the LP Interests or any other interests of the Original KPBC;

(d)  for a judgment granting recovery to the Cook Estate from KPBC Joint Venture, Cura, and/or Omni, jointly and severally, for each avoidable transfer of the LP Interests or any other interests of Cook in the Original KPBC or its value pursuant to 11 U.S.C. §550;

(e)  for a judgment disallowing the Omni Claim in its entirety or, to the extent any portion is allowed for a determination that such claim is unsecured;

(f)  for a judgment disallowing any claims KPBC Joint Venture, Cura, or Omni may have against the Cook Estate unless KPBC Joint Venture, Cura, and Omni have disgorged such avoidable transfers; and

(g)  for a judgment disallowing the Omni Claim to the extent it includes (i) post-petition interest, costs and attorney's fees and (ii) late charges and default interest in excess of that allowed by California law.

3.    For a judicial determination that: (a) KPBC Joint Venture was never a proper joint venture; (b) KPBC Joint Venture is deemed to have never existed; (c) all actions taken by KPBC Joint Venture are void; and (d) Cook continues to be the exclusive owner of Cook's Original KPBC ownership interests and such ownership interests belong to the Cook Estate free of any encumbrance by Omni.

4.    For a judicial determination that if the KPBC Joint Venture is a proper joint venture  (a) Cura is a general partner in the KPBC Joint Venture,  (b) Cura is jointly and severally liable for all debts of the KPBC Joint Venture including the Omni Loan, and (c) to the extent the

First Amended Complaint

Cook Estate pays, or collateral posted by Cook is used to satisfy, any debt of the KPBC Joint Venture, Cura is liable to the Cook Estate for one-half of any such payment.

5.    For a judicial determination that: (a) the Voting Trust is void, of no force and effect, and is unenforceable against Plaintiffs; and (b) Cura has no authority to market, sell, transfer or convey the LP Interests or to direct the proceeds from such sale pursuant to the Voting Trust.

6.    Assuming that KPBC Joint Venture is not determined to be invalid and all actions thereof having no effect, for a judicial determination that KPBC Joint Venture is not an affiliate of the Original KPBC under the Team LP and Arena LP Agreements.

7.    For a judicial determination of the respective rights of Plaintiffs and all Defendants in the LP Interests and any other interests held by Cook in the Original KPBC.

8.    For a judicial determination that the TMI Liens on Cook's ownership interests in the Original KPBC, including the LP Interests, are junior to the liens on those assets preserved for the benefit of the estate.

9.    For a judicial determination that the USA Trust Lien on Cook's ownership interests in the Original KPBC, including the LP Interests, are junior to the liens on those assets preserved for the benefit of the estate and that the USA Trust Lien has expired.

10.    For a  judicial determination that the Hearn Pacific Lien does  not attach to Cook's ownership interests in the Original KPBC, including the LP Interests, and to the extent it does attach it is junior to the liens on those assets preserved for the benefit of the estate;

11.    For costs of suit incurred herein and pre- and post-petition interest against Defendants, to the extent permitted by law;

First Amended Complaint

-33-

12.     For attorneys' fees and costs incurred by Original KPBC and/or the Trustee to the extent allowed by any applicable law, contract, or statute; and

13.     For such other and further relief as the Court may deem just and proper.

Dated:  June 18, 2012

TREPEL GREENFIELD SULLIVAN & DRAA LLP

By:   _/s/ Christopher D. Sullivan_____
Christopher D. Sullivan
Attorneys for the Chapter 11 Trustee

First Amended Complaint